IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BILLINGS DIVISION

| | |
|---|---|
| **MARIE POLISENO,** | CV-12-108-BLG-RFC-CSO |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATIONS OF U.S. MAGISTRATE JUDGE** |
| **CREDIT SUISSE SECURITIES (USA), LLC, and** | |
| **CREDIT SUISSE SECURITIES (EUROPE), LTD,** | |
| Defendants. | |

Plaintiff Marie Poliseno ("Poliseno") brings this action against

Defendants Credit Suisse Securities (USA), LLC ("Credit Suisse (USA)")

and Credit Suisse Securities (Europe), LTD ("Credit Suisse (Europe)").

She alleges that she detrimentally relied on the Defendants' promises

and representations regarding a proposed employment contract that was

to be performed in London, England. *See First Am. Cmplt. (Dkt. 11-1).*

Now pending are Credit Suisse (USA)'s Motion to Dismiss or Alternatively to Transfer Venue *(Dkt. 12)* and Credit Suisse (Europe)'s Motion to Dismiss for lack of personal jurisdiction *(Dkt. 15)*.

## I. BACKGROUND

Until July 27, 2011, Poliseno was employed as a Vice President in Risk Management for Goldman, Sachs & Co. *Dkt. 11 at 3, ¶5.* In August 2011, she began "networking with professional acquaintances" in search of work. *Dec. Marie Poliseno (Dkt. 20-1)* at ¶ 2. To that end, she contacted Athena Alexander ("Alexander"), an employee of Credit Suisse (USA) in New York. Poliseno did not have specific jobs in mind and was "obviously willing to travel." *Id.* Alexander did not indicate in that initial call that there might be anything currently available within Credit Suisse. *Id.*

On September, 30, 2011, Alexander called Poliseno and told her about a potential temporary position in London. Poliseno states that Alexander told her that "she wanted to hire me to help negotiate and train staff in London in negotiation skills ...." *Dkt. 20-1* at ¶ 3. According to Poliseno, Alexander "quoted a daily rate of pay" and said

that the company would provide London housing, meal allowances, and four trips back to Montana. *Id.* at ¶ 4. Alexander referred Poliseno to Shafiq Hussain, a Credit Suisse (Europe) employee, to "expedite the details necessary to get [her] working in London." *Id.* The job was to be performed in London. *Id.* at ¶ 3; *Dec. Mohammed Shafiq Hussain (Dkt. 17)* at ¶ 6.

On October 3, 2011, Poliseno formed her consulting company, MAP Consulting, LLC. Poliseno states that she did so "in anticipation of the immanent (*sic*) CS-USA engagement...." *Dkt. 20-1* at ¶ 5.

Over the next six weeks, Poliseno had numerous telephone and email communications with Amit Kaul, a Credit Suisse (USA) employee, and Hussain regarding the terms and conditions of the London position. *Id.* at ¶¶ 6-10; *Dkt. 11-1* at ¶ 11. No representative of Credit Suisse (Europe) or Credit Suisse (USA) traveled to Montana. *Dkt. 17* at ¶ 4; *Dkt. 14* at ¶ 12. Poliseno does not contend that any employee of either Defendant traveled to Montana. Instead, she contends that, by Defendants' email and telephone communications, "the offending statements were made in electronic space." *Dkt. 20 at 15.*

By October 19, 2011, the "basic details" of Poliseno's compensation were confirmed, but questions regarding her work permits and legal and tax issues remained. *Dkt. 20-1* at ¶¶ 8-10. Then, on November 17, 2011, Alexander sent Poliseno an email notifying her that "we did not get the approval to move forward...." *Dkt. 14-5.* Thereafter, "contact broke off" between the parties. *Dkt. 11-1* at ¶ 13.

Credit Suisse (USA) is a limited liability company organized under the laws of Delaware, with its principal place of business in New York. *Dkt. 14* at ¶ 4. Credit Suisse (USA) does not maintain any offices or employees in Montana. *Id.*

Credit Suisse (Europe) is a private limited company with its principal place of business and registered office in London, England. *Dec. Paul E. Hare (Dkt. 18)* at ¶ 5. Credit Suisse (Europe) does not have a branch operation in the United States, is not registered with the Montana Secretary of State, does not pay taxes in Montana, and does not have any offices, facilities, or employees based in Montana. *Id.* at ¶¶ 5, 7; *Dec. Nathan W. Cripps (Dkt. 19)* at ¶ 5.

# II. CREDIT SUISSE (EUROPE)'S MOTION TO DISMISS

## A. Parties' Arguments

Credit Suisse (Europe) argues that this Court has neither general nor specific jurisdiction over it, because it is neither "found within" Montana, nor has it done any act to submit itself to Montana's jurisdiction under Montana's long-arm statute. Credit Suisse (Europe) argues that Poliseno initiated the discussions at issue, and all services were to be performed outside the State of Montana. *Credit Suisse (Europe)'s Br. in Support of Mot. to Dismiss (Dkt. 16)* at 15. Alternatively, Credit Suisse (Europe) argues that Poliseno's claims should be dismissed based on *forum non-conveniens* and real-party-in-interest grounds. *Id.* at 25-26.

Poliseno contends that Alexander was an agent of Credit Suisse (Europe) with the apparent authority to enter into the proposed employment contract. *Pltf's Response to Credit Suisse (Europe)'s Mot. to Dismiss (Dkt. 21)* at 3-4. Poliseno argues that Alexander's contact with Poliseno is sufficient to subject Credit Suisse (Europe) to Montana's jurisdiction under Mont. R. Civ. P. 4(B)(1)(a). *Id.* at 3; *Dkt. 20* at 11-13

(argument incorporated by reference, *Dkt. 21 at 2*). In response to the *forum non-conveniens* argument, Poliseno argues that Montana has an important economic interest in protecting its college graduates from foreign competitors in the global marketplace, and therefore venue here is proper. *Dkt. 21* at 4-7.

## B. Discussion

Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. *Schwarzenegger v. Fred Martin Motor Co.,* 374 F.3d 797, 800 (9th Cir. 2004). Where, as here, the motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts. *Id.* The Court's duty is to inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction, accepting the plaintiff's allegations as true. *Id.*

Where no applicable federal statute governs personal jurisdiction, the district court must apply the law of the state in which the district court sits. *Schwarzenegger,* 374 F.3d at 800. Here, no federal statute or

rule governs personal jurisdiction. Thus, Montana's long-arm statute must be applied. *See Omeluk v. Langsten Slip and Batbyggeri A/S*, 52 F.3d 267, 271 (9ᵗʰ Cir. 1995). In addition, the exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice embodied in the due process clause. *Id*. If the requirements of the long-arm statute are not met, the Court need not address the due process issue. *See generally  See* WILLIAM W. SCHWARZER, A. WALLACE TASHIMA AND JAMES M. WAGSTAFFE, *Federal Civil Procedure Before Trial*, 3:25.2 (2004) (citing *Kendall*, 700 F.2d at 538).

Montana's long-arm statute is found in Rule 4(B)(1) of the Montana Rules of Civil Procedure, which provides:

> All persons found within the state of Montana are subject to the jurisdiction of the courts of this state. In addition, any person is subject to the jurisdiction of the courts of this state as to any claim for relief arising from the doing personally, through an employee, or through an agent, of any of the following acts:
>
>> (a) the transaction of any business within this state;
>>
>> (b) the commission of any act which results in accrual within this state of a tort action;

(c) the ownership, use or possession of any property, or of any interest therein, situated within this state;

(d) contracting to insure any person, property or risk located within this state at the time of contracting;

(e) entering into a contract for services to be rendered or for materials to be furnished in this state by such person; or

(f) acting as director, manager, trustee, or other officer of any corporation organized under the laws of, or having its principal place of business within this state, or as personal representative of any estate within this state.

Rule 4(B)(1) embodies principles of both general and specific jurisdiction. General jurisdiction may lie if a person is "found within Montana." *Cimmaron Corporation v. Smith*, 67 P.3d 258, 260 (Mont. 2003). The Montana Supreme Court has stated:

A party is "found within" the state if he or she is physically present in the state or if his or her contacts with the state are so pervasive that he or she may be deemed to be physically present there. A nonresident defendant that maintains "substantial" or "continuous and systematic" contacts with the forum state is found within the state and may be subject to that state's jurisdiction even if the cause of action is unrelated to the defendant's activities within the forum.

*Bi-Lo Foods, Inc. v. Alpine Bank*, 955 P.2d 154, 157 (Mont. 1998); *see also Threlkeld v. Colorado*, 16 P.3d 359, 361 (Mont. 2000). In *Threlkeld*, the Montana Supreme Court held that it lacked general jurisdiction over the

-8-

out-of-state defendants.  The court reached this conclusion even though the defendants accepted referrals from Montana, maintained a web site accessible in Montana about their veterinary programs, held continuing education seminars which they advertised nationally and which were attended by people from Montana, sent newsletters and brochures to people in Montana, solicited donations from alumni and other interested parties including people in Montana, and sent press releases to newspapers throughout the region including Montana.  *Threlkeld*, 16 P.3d at 362.

Credit Suisse (Europe), by contrast: (1) does not pay taxes in Montana; (2) is not registered with the Montana Secretary of State; (3) has no telephone listings in Montana; (4) does not, as noted above, have any offices, facilities, or employees based in Montana; and (5) has not directed any advertising or marketing efforts to or at Montana.  The Montana Supreme Court in *Bedrejo v. Triple E Canada, Ltd.* noted that these types of facts "are significant in determining whether general jurisdiction exists," and further stated that such lack of contacts indicates that general jurisdiction does not exist.  984 P.2d 739, 742

(Mont. 1999) (citing *Bi-Lo Foods*, 955 P.2d 154, ¶ 19, and *Simmons Oil Corp.*, 796 P.2d 189)).  Clearly, Credit Suisse (Europe) is not "physically present" in Montana for purposes of general jurisdiction.

Poliseno contends, however, that Credit Suisse (Europe)'s contacts with Montana were "Deliberate [and] Directed Toward Plaintiff" and therefore are sufficient to establish personal jurisdiction.  *Dkt. 21 at 3.* She argues that Credit Suisse (Europe) is subject to specific jurisdiction under Mont. R. Civ. P. 4(B)(1)(a) due to its "transactions of [ ] business within this state."  *Dkt. 21* at 2 (incorporating arguments made at *Dkt. 20* at 11).  Poliseno does not, however, make the required prima facie showing of jurisdictional facts.

In *Edsall Construction Co., Inc. v. Robinson*, the supreme court held that interstate communication regarding a bid on a construction contract "*to be entirely performed in another state*" does not by itself constitute "transaction of business" under Montana's long-arm statute, particularly when the resident plaintiff solicited the bid.  804 P.2d 1039, 1042 (Mont. 1991) (emphasis in original).

In *Cimmaron*, the supreme court concluded that the district court

lacked personal jurisdiction over the defendant – even though he

traveled to Montana to negotiate the terms of an agreement with the

plaintiff – where the contract was to be performed elsewhere.

*Cimmaron.* 67 P.3d at 260.  The supreme court explained:

> [A] non-resident does not subject himself to the jurisdiction of
> Montana by merely entering into a contract with a resident of
> Montana." *Edsall Construction Co., Inc. v. Robinson (1991), 246
> Mont. 378, 382, 804 P.2d 1039, 1042.*  We have further stated that:
> "interstate communication is an almost inevitable accompaniment
> to doing business in the modern world, and cannot by itself be
> considered a 'contact' for justifying the exercise of personal
> jurisdiction.'" *Edsall*, *246 Mont. at 382, 804 P.2d at 1042 (citations
> omitted).*  Finally, we have concluded that personal jurisdiction is
> not acquired through interstate communication made pursuant to a
> contract *that is to be performed in another state.*"  *Bird v. Hiller
> (1995), 270 Mont. 467, 473*, 892 P.2d 931, 934.

*Id.* at 261 (emphasis in original).

Applying this law to the facts here, it cannot be concluded that

Credit Suisse (Europe) "transacted business" with Poliseno in Montana

sufficient to satisfy Rule 4(B)(1)(a)'s requirement.  Credit Suisse

(Europe)'s negotiations with Poliseno for an employment contract to be

performed exclusively in London is not enough, particularly in light of

the fact that Poliseno initiated the first contact leading to the

negotiations, and that no Credit Suisse (Europe) representative entered

Montana. *Cimmaron*, 67 P.3d at 261; *Edsall*, 804 P.2d at 1042. Credit Suisse (Europe)'s use of telephones and email correspondence in communicating with Poliseno from New York or London to Montana is alone not sufficient to confer specific personal jurisdiction. *Cimmaron*, 67 P.3d at 261.

Poliseno relies on *Parker Bros. Farms, Inc. v. Burgess*, 642 P.2d 1063 (Mont. 1982) and *Prentice Lumber Co. v. Spahn*, 474 P.2d 141 (Mont. 1970) to support her argument that Credit Suisse (Europe) transacted business in Montana. In each of those cases, however, the non-resident defendant placed orders for goods that were produced in and shipped from Montana – *see Parker Bros.*, 642 P.2d at 1064; *Prentice*, 474 P.2d at 141 – whereas here the negotiations concerned services to be performed exclusively in London. *See B.T. Metal Works & Daryl Boyd, D.B.A. v. United Die & Mfg. Co.*, 100 P.3d 127, 133 (Mont. 2004) (noting distinction between a contract for services and a contract for the procurement of products, finding that the manufacture and sale of products constituted "transacting business" whereas a contract for services to be performed out of state did not). Credit Suisse (Europe)'s

contacts with Montana are more similar to those in *Edsall* and *Threlkeld*, where the supreme court declined jurisdiction, than those in *Parker Bros.* and *Prentice*. Poliseno makes no attempt to distinguish the former cases. *See Dkts. 20, 21.*

The Court concludes that Credit Suisse (Europe) did not "transact business" in Montana, and is therefore not subject to specific jurisdiction. Because the Court has determined that personal jurisdiction over Credit Suisse (Europe) does not lie, either as a result of it being found in Montana, or under the other provisions of Montana's long-arm statute, the Court need not address the issue of due process. *Cimmaron*, 67 P.3d at 260; *Threlkeld*, 16 P.3d at 366; *Bi-Lo Foods*, 955 P.2d at 156; *Bird*, 892 P.2d at 934. Credit Suisse (Europe)'s motion to dismiss will be granted.

## III. CREDIT SUISSE (USA)'S MOTION TO DISMISS

### A. Parties' Arguments

Credit Suisse (USA) asserts four separate grounds in support of its motion to dismiss. Credit Suisse (USA) first argues that because it would not have been a party to the alleged employment contract, Poliseno cannot maintain a claim of promissory estoppel against it.

*Credit Suisse (USA)'s Br. in Support of Mot. to Dismiss (Dkt. 13)* at 15.

Second, Credit Suisse (USA) argues that this case should be dismissed

based on the doctrine of *forum non-conveniens,* arguing that England

provides an adequate alternative forum. *Id.* at 17-26. Third, Credit

Suisse (USA) argues that Poliseno is not the real party in interest,

because any alleged contract was to be with Poliseno's consulting

company, MAP Consulting, LLC, not Poliseno personally. *Id.* at 26-28.

Fourth, Credit Suisse (USA) argues that Montana is not the proper

venue. *Id.* at 28-30. Finally, Credit Suisse argues that if this action is

not dismissed, it should be transferred to the Southern District of New

York. *Id.* at 30-36.

In response, Poliseno first argues that she has properly stated a

claim for promissory estoppel. Poliseno argues that her damages arise

not from the failure to form a contract, but from her detrimental

forbearance of other employment opportunities based on the September

30, 2011 representations made by Alexander, a Credit Suisse (USA)

employee. *Pltf's Response to Credit Suisse (USA)'s Mot. to Dismiss (Dkt.

20)* at 3-5. Second, Poliseno argues that her consulting company, MAP

Consulting, LLC, cannot be the real party in interest because the company's formation documents were not filed until four days after the alleged representations giving rise to her claim. *Id*. at 10-11. Third, Poliseno argues that this Court has personal jurisdiction over Credit Suisse (USA) because Alexander "chose to reach for [Poliseno] in Montana." *Id*. at 11-13. Finally, Poliseno argues that Credit Suisse (USA) has failed to satisfy its burden to show that dismissal is proper under *forum non-conveniens* or that this case should be transferred to the Southern District of New York. *Id*. at 14-18.

## B. Discussion

The Court must first determine whether venue in this district is appropriate before reaching the question of whether Poliseno has stated a claim upon which relief may be granted or whether Poliseno is the real party in interest. *See Arrowsmith v. United Press Int'l.*, 320 F.2d 219, 221 (2d Cir. 1963) (finding district court erred in dismissing action for failure to state a claim prior to addressing challenges to personal jurisdiction and venue, because dismissal on the former ground would be with prejudice, while dismissal for either of the two latter grounds would

be without prejudice).

Rule 12(b)(3) permits a defendant, before answering, to challenge a complaint for improper venue.  If the plaintiff's chosen forum is an improper venue, the Court may dismiss the action or transfer the case to a district where venue would be proper.  28 U.S.C. § 1406.  Whether to dismiss for improper venue or to transfer a case to a proper court is within the district court's sound discretion.  *King v. Russell*, 963 F.2d 1301, 1304 (9th Cir. 1992); *Cook v. Fox*, 537 F.2d 370, 371 (9th Cir. 1976).

The plaintiff has the burden of showing that venue is proper in this district.  *Allstar Mktg. Group, LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009) (citing *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979).  Also, the plaintiff must establish venue as to each claim and each defendant.  *Hoover Group, Inc. v. Custom Metalcraft, Inc.*, 84 F.3d 1408, 1410 (Fed. Cir. 1996).  When a court considers such a motion, "[the] pleadings need not be accepted as true, and facts outside the pleadings may be considered."  *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1081 (9th Cir. 2009);

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

> For venue purposes, a civil action may be brought in:
>
> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . .; or
>
> (3) if there is no district in which the action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). A corporation is "deemed to reside...in any judicial district in which [the corporation] is subject to the court's personal jurisdiction..." 28 U.S.C. § 1391(c)(2).

Here, venue in Montana cannot be premised on section 1391(b)(1) because not all of the defendants reside here. As discussed above, Credit Suisse (Europe) is not subject to this Court's personal jurisdiction, and therefore does not reside in Montana.

Nor can venue be premised on section 1391(b)(2). The Restatement considers a promissory estoppel claim as equivalent to one for breach of contract. *US Ecology, Inc. v. State*, 129 Cal. App. 4th 887, 903, 28 Cal.

Rptr. 3d 894, 906 (2005) (citing Restatement (Second) of Contracts § 90, cmt. d.); *see also* 28 Am. Jur. 2d Estoppel and Waiver § 34 (2012); *Bd. of County Com'rs of Summit County v. DeLozier*, 917 P.2d 714, 716 (Colo. 1996). The Ninth Circuit has stated that "the spirit of § 1391(a) [now § 1391(b)(2)] is better served...if venue for a claim based on breach of contract be the place of intended performance...." *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 842 (9th Cir. 1986).

Poliseno has not demonstrated how a "substantial part" of the events giving rise to this claim occurred in Montana. *See Dkt. 20* at 15 ("And, arguably, there is no place of occurrence except in the ether of electronic reality because, like so many business transactions the offending statements were made in electronic space"). Because the place of intended performance of the promise here was to take place in Europe, and not Montana, the Court cannot conclude that a "substantial part" of the events occurred in Montana.

Finally, as to 1391(b)(3), the Court concludes that venue does not lie in this district because this Court does not have personal jurisdiction over either defendant. First, the Court lacks personal jurisdiction over

Credit Suisse (Europe).  *See* Section II, *supra.*  Second, considering the arguments presented and applicable legal authorities, the Court concludes that it also lacks personal jurisdiction over Credit Suisse (USA).[1]

In support of its motion to dismiss for improper venue, Credit Suisse (USA) argues that it "should not be forced to litigate in a remote forum when [it] did not reach into or initiate contact in Montana," and that "[t]here is no reasonable basis upon which Credit Suisse (USA) could believe it would be haled into Court here when Poliseno contacted a friend in New York for help."  *Dkt. 13* at 29-30.  Credit Suisse (USA) cites *Edsall* for the proposition that email and telephone communications are insufficient to establish that the claim occurred in Montana.  *Dkt. 13* at 25.

In response, Poliseno offers the same arguments and legal authorities as in her response to Credit Suisse (Europe)'s motion.  *See*

_____

[1]Credit Suisse (USA) does not separately move for dismissal based on lack of personal jurisdiction.  *See Dkt. 22* at 9, n. 1.  However, the failure to raise lack of personal jurisdiction as grounds for dismissal in the instant motion has not resulted in a waiver of the defense.  *See Phillips v. Baker*, 121 F.2d 752, 754 (9th Cir. 1941).

*Dkt. 20* at 11-13; *Dkt. 21* at 2 ("Plaintiff restates herewith all of the arguments she has made in her Response to [Credit Suisse (USA)'s] Motion on the grounds that [Credit Suisse (Europe)] is in the same legal position..."). For the reasons set forth in Section II, the Court finds Poliseno's arguments unpersuasive.

The facts demonstrate that Credit Suisse (USA) does not maintain any offices or employees in Montana, *dkt. 14* at ¶ 4, and all of the communications regarding this contract for services to be performed in Europe took place in "electronic space." *Dkt. 20* at 15. For the reasons this Court lacks personal jurisdiction over Credit Suisse (Europe), the Court concludes that it also lacks personal jurisdiction over Credit Suisse (USA). Venue therefore cannot be premised on section 1391(b)(3).

Because venue is improper in this district, Poliseno's action is subject to dismissal, and Credit Suisse (USA)'s motion to dismiss should be granted. *See Nizami v. Woods*, 263 F. Supp. 124, 125 (S.D.N.Y. 1967) (dismissal, rather than transfer, appropriate when plaintiff "furnish[es] no reasons why it would be more in the interest of justice for the Court to transfer the case rather than to dismiss it without prejudice").

In light of this conclusion, the Court need not reach Credit Suisse (USA)'s other grounds for relief.

## V. CONCLUSION

Based on the foregoing,

**IT IS RECOMMENDED** that Credit Suisse (USA)'s motion to dismiss (*Dkt. 12*) and Credit Suisse (Europe)'s motion to dismiss *(Dkt. 15)* be **GRANTED**, and Poliseno's claims against both defendants be **DISMISSED WITHOUT PREJUDICE.**

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 8th day of February, 2013.

**/s/ Carolyn S. Ostby**
United States Magistrate Judge